IN THE SUPREME COURT OF THE STATE OF DELAWARE

JAMES LAWHORN, §
§ No. 40, 2016
Defendant Below, §
Appellant, § Court Below: Superior Court
§ of the State of Delaware
v. §
§ Cr. ID 1503000591
STATE OF DELAWARE, §
§
Plaintiff Below, §
Appellee. §

Submitted: August 24, 2016
Decided: November 9, 2016

Before **STRINE**, Chief Justice; **HOLLAND** and **SEITZ**, Justices.

## **O R D E R**

This 9th day of November 2016, upon consideration of the appellant's opening brief, the appellee's motion to affirm, the supplemental submissions of the parties, and the record below, it appears to the Court that:

(1) The appellant, James Lawhorn, filed this appeal from a Superior Court order sentencing him for Sex Offender Unlawful Sexual Contact Against a Child and Unlawful Sexual Contact in the First Degree. The State of Delaware has filed a motion to affirm the judgment below on the ground that it is manifest on the face of Lawhorn's opening brief that his appeal is without merit. We agree and affirm.

(2) The record reflects that, in March 2015, a New Castle County grand jury indicted Lawhorn for multiple sexual offenses, including Rape in the First

Degree. On September 17, 2015, Lawhorn pled guilty to Sex Offender Unlawful Sexual Contact Against a Child and Unlawful Sexual Contact in the First Degree. In exchange for Lawhorn's guilty plea, the State agreed to enter a *nolle prosequi* on the remaining charges and to recommend twenty-five years of Level V incarceration for Sex Offender Unlawful Sexual Contact Against a Child (which was the minimum-mandatory sentence) and eight years of Level V incarceration, suspended for decreasing levels of supervision, for Unlawful Sexual Contact in the First Degree. Lawhorn and the State requested a presentence investigation.

(3) In the Truth-In-Sentencing Guilty Plea Form, Lawhorn indicated that he freely and voluntarily decided to plead guilty, he understood that he was waiving certain constitutional rights by pleading guilty, and no one had promised him a particular sentence. The form reflected that Lawhorn faced a maximum penalty of life imprisonment. During his guilty plea colloquy with the Superior Court, Lawhorn stated that he understood the Superior Court was not bound by the recommended sentence, no one promised him a particular sentence, he faced up to life imprisonment, and that he was guilty of Sex Offender Unlawful Sexual Contact Against a Child and Unlawful Sexual Contact in the First Degree. The Superior Court determined that Lawhorn's guilty plea was knowing, intelligent, and voluntary and accepted the plea.

(4) Lawhorn was sentenced on January 22, 2016. At the sentencing hearing, the prosecutor acknowledged the minimum mandatory of twenty-five years Level V incarceration for Sex Offender Unlawful Sexual Contact Against a Child and explained why the State stood by the sentencing recommendation made at the time of the guilty plea. The prosecutor reviewed Lawhorn's previous criminal offenses, including his 1991 conviction for Unlawful Sexual Contact in the Second Degree, which involved an eleven-year old child, his 2002 conviction for Rape in the Second Degree with a victim who was less than twelve years old, and the circumstances of his new offenses. The Superior Court interrupted the prosecutor to note that the victim in the 2002 conviction was nine-years old. The prosecutor also stated that his office had spoken with the victim's mother, who wanted the Superior Court to be aware that the victim was in therapy and would be affected her entire life.

(5) Lawhorn's counsel did not object to the prosecutor's statements. He stated that he believed the minimum mandatory sentence of twenty-five years as requested by the State was appropriate in light of Lawhorn's record. He acknowledged Lawhorn's previous crimes, but emphasized that Lawhorn was molested at a young age himself and suffered from impulse-control and other behavioral issues as a result of his mother dropping him when he was a child. Lawhorn then read a letter to the Superior Court in which he took responsibility for

3

his wrongdoing and described his difficult childhood. After the Superior Court questioned whether Lawhorn was taking responsibility for his actions or blaming others for his problems, Lawhorn apologized for his wrongdoing. The Superior Court accepted and read Lawhorn's letter.

(6) In the course of reading his letter, Lawhorn claimed that he was promised a sentence of twenty-five years. The prosecutor pointed out that the Truth-In-Sentencing Guilty Plea Form reflected the twenty-five year minimum mandatory for Sex Offender Unlawful Sexual Contact Against a Child and that Lawhorn faced a maximum sentence of life imprisonment. Upon questioning by the Superior Court, Lawhorn admitted that the Superior Court judge who accepted his guilty plea told him that the court was not bound by the sentencing recommendation and could sentence Lawhorn to up to life imprisonment.

(7) The Superior Court then proceeded to sentence Lawhorn. The Superior Court acknowledged Lawhorn's difficult childhood and that sexual abuse in one generation can lead to sexual abuse in the next generation. The Superior Court emphasized Lawhorn's criminal record, especially his sexual abuse of children, which included an eleven-year old victim and two nine-year old victims. The Superior Court judge also stated that he did not believe Lawhorn's expressions of remorse, but appreciated Lawhorn stating that he wished to reform. The Superior Court expressed concern at the risk Lawhorn posed to children as long as

4

he was outside of prison and sentenced Lawhorn to life imprisonment for Sex Offender Unlawful Sexual Contact Against a Child. The Superior Court sentenced Lawhorn to eight years of Level V incarceration for Unlawful Sexual Contact in the First Degree. This appeal followed.

(8) On appeal, Lawhorn argues that the State violated his due process rights when the prosecutor made statements during sentencing about the aggravating circumstances of his offenses and his bad character. Lawhorn contends that these statements could only have had the effect of escalating Lawhorn's sentence after the State had agreed in the plea agreement to recommend the minimum mandatory sentence of twenty-five years of Level V incarceration for Sex Offender Unlawful Sexual Contact Against a Child and eight years of Level V incarceration, suspended for decreasing levels of supervision, for Unlawful Sexual Contact in the First Degree. Lawhorn's arguments are similar to the arguments made in *Jones v. State*.[1] In *Jones*, this Court found no plain error where the Superior Court imposed eighteen years of Level V incarceration, instead of the eight years of Level V incarceration the State agreed to recommend in the plea agreement, after the prosecutor emphasized aggravating circumstances and read a victim impact statement during sentencing.[2]

---

[1] 2016 WL 3568181 (Del. June 22, 2016).
[2] *Id.* at *2-3.

5

(9)     Like *Jones*, Lawhorn failed to object to the prosecutor's statements at sentencing or otherwise preserve his claim of error.  We therefore review his claims for plain error.[3]  "[T]he doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[4]  In plain error review, the defendant has the burden to demonstrate actual prejudice.[5]  Lawhorn has not met this burden.

(10)     At the sentencing hearing, the State stated that it stood by its sentencing recommendation at the time of the guilty plea.  Even where a plea agreement exists, the State is entitled to support its plea agreement with the factors relevant to the reasonableness of the sentence recommendation.[6]  Although the State could have shown more restraint in its comments at sentencing, under a plain

---

[3] *Id.* at *2 (reviewing claim that prosecutor breached plea agreement at sentencing where defendant did not object at sentencing under plain error standard of review); *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986) ("Failure to make an objection [below] constitutes a waiver of the defendant's right to raise that issue on appeal, unless the error is plain."); *see also Puckett v. United States*, 556 U.S. 129, 139–43 (2009) (plain error review appropriate for government's breach of plea agreement where the defendant failed to object).

[4] *Wainwright*, 504 A.2d at 1100.

[5] *Capano v. State*, 781 A.2d 556, 662–63 (Del. 2001) ("To establish plain error, Capano has the burden of showing actual prejudice.").

[6] *Jones*, 2016 WL 3568181, at *2.

error standard of review we find that the State's comments failed to rise to the level of subverting the integrity of the plea bargaining process.[7]

(11) Nowhere in its statements did the State seek a higher sentence and although the State referred to circumstances in the record regarding Lawhorn's past conduct that rationally supported a higher sentence, those facts were ones of which the trial court was undoubtedly aware. For that reason, of course, there was little, to no need, for the State to refer to them, given that the trial judge could not enter a sentence less than the mandatory minimum to which the State was recommending. But, the State did not make inflammatory remarks about those facts and the State was entitled to explain the reasoning for its recommendations, and those facts played some role in that regard. Nonetheless, we note that when the State has reached a plea agreement and the defendant is not seeking a sentence less than the State's recommendation, the State should be cautious in commenting on aggravating factors, because if, when objectively read, those remarks seem to be only useful in suggesting a sentence higher than the State agreed to, they can support reversal based on the State's failure to adhere in good faith to its bargain.

---

[7] *See Santobello v. New York*, 404 U.S. 257, 262 (1971) (recognizing the "interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty" as the important interests at stake when prosecutors violate the terms of plea agreements); *Jones*, 2016 WL 3568181, at *1 (concluding prosecutor's comments did not undermine the integrity of the plea bargaining process); *Cole v. State*, 922 A.2d 354, 359–60 (Del. 2005) (emphasizing the special role of prosecutors as representatives of the people and justice in the context of plea negotiations).

(12) For reasons we have suggested, however, even if Lawhorn had shown a violation of the plea agreement, he has failed to establish that he suffered prejudice as a result of the prosecutor's conduct. The Superior Court always had discretion to sentence Lawhorn to more than twenty-five years of Level V incarceration, which Lawhorn acknowledged during his guilty plea colloquy. Lawhorn also acknowledged that he faced life imprisonment for his crimes. Based on the Superior Court's comment during the prosecutor's statements that one of Lawhorn's previous victims was nine years old, it is plain that the Superior Court was already familiar with the details of Lawhorn's criminal history.[8] The Superior Court also questioned whether Lawhorn was in fact taking responsibility for his actions as he claimed and expressed concerns regarding the risk Lawhorn posed to children. When considered in light of these facts, we find no prejudice to Lawhorn and no plain error in the sentencing proceedings.

---

[8] *See* Appellant's Op. Br. App. at A35 Tr. 3:11 (sentencing judge pausing prosecutor and interjecting on his own that 2002 victim was nine-years old); Appellant's Op. Br. App. at A39 Tr. 20:6-17 (sentencing judge acknowledging Lawhorn's difficult childhood, but also recognizing Lawhorn's "horrendous" criminal history, especially his abuse of children). *See also Jones*, 2016 WL 3568181, at *3 (finding no prejudice resulted from prosecutor's comments at sentencing because record reflected that trial judge read presentence investigation that highlighted defendant's violent criminal history); *Teti v. State*, 2006 WL 1788351, at *1-2 (Del. June 28, 2006) (rejecting claim that the State breached plea agreement where the Superior Court heard from the victim and the defendant and found multiple aggravating factors before sentencing defendant to twenty years of Level V incarceration instead of four years as the State agreed to recommend).

NOW, THEREFORE, IT IS ORDERED that the Motion to Affirm is granted and the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ Leo E. Strine, Jr.

Chief Justice